UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.T.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No.   2:19-cv-01608-JDP (SS)<br><br>ORDER GRANTING CLAIMANT'S MOTION FOR SUMMARY JUDGMENT<br><br>ECF No. 11<br><br>ORDER DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>ECF No. 14 |

　　　　Elizabeth T., on behalf of her minor son T.T. ("claimant"), challenges the final decision of the Commissioner of Social Security ("Commissioner") denying claimant's application for Title XVI child's disability benefits. ECF No. 1. Claimant has impaired hearing, and his mother argues, *inter alia*, that the Commissioner has not sufficiently considered his difficulties in speaking. I agree; claimant's expressive language impairment cannot be ignored or reduced to his hearing impairment. I will remand this case so that the Commissioner can consider claimant's expressive language impairment in its own right.[1]

---

[1] The case is submitted on claimant's motion for summary judgment, ECF No. 11, to which the Commissioner has filed an opposition and cross-motion for summary judgment, ECF No. 14. Both parties have consented to magistrate judge jurisdiction. ECF Nos. 6, 8.

1

## I.  STANDARD OF REVIEW

On appeal, I ask whether substantial evidence supports the factual findings of the administrative law judge ("ALJ") and whether the ALJ applied the correct legal standards. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); 42 U.S.C. § 405(g). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Although "the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," "the ALJ's findings . . . must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (internal citation omitted); *see also Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (noting that, when an ALJ disagrees with medical opinions, "[t]he ALJ must do more than offer his conclusions[; h]e must set forth his own interpretations and explain why they, rather than the doctors,' are correct"). Relatedly, I review only the reasons provided by the ALJ in the disability determination and may not affirm based on a ground upon which the ALJ did not rely. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

A motion for summary judgment may be granted only when the there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The burden of establishing that there is no genuine issue of material fact lies with the moving party. *See Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). Once the moving party has met that burden by "presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, [Fed. R. Civ. P. 56(e)(2)] shifts to [the nonmoving party] the burden of presenting specific facts showing that such contradiction is possible." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 950-52 (9th Cir. 1978); *see also Nissan*, 210 F.3d at 1102-03.

## II.  BACKGROUND

Claimant's mother filed for Title XVI child's disability benefits on behalf of claimant on April 30, 2015, when claimant was less than five years old. AR 116. In a disability report submitted as part of the application, claimant's mother described claimant's condition as

"[h]earing problems in both ears" and reported that claimant had been disabled since he was born. AR 195.

Claimant's application was denied both initially and upon reconsideration. AR 116-20, 127-32. Claimant then requested a hearing before an ALJ, AR 133-35, and a hearing was held on June 23, 2017, AR 32. On May 30, 2018, the ALJ found that claimant was not disabled. AR 32-50. Claimant requested review, AR 169-70, and the Appeals Council denied claimant's request, AR 1-6. Claimant now seeks judicial review under 42 U.S.C. § 405(g).

Claimant's administrative file includes records or reports for the relevant time period from several educational and health care facilities and providers: (1) Maureen Kruskal, M.D., a state agency examiner, AR 96-101; (2) Henry Crowhurst, M.D., a state agency examiner, AR 103-15; (3) Paula Kokal, M.A., a consultative speech and language examiner, AR 541-43, 766-67; (4) Robert McElroy, M.D., a consultative examiner, AR 548-54; (5) Amanda McClellan, claimant's schoolteacher, AR 229-35; (6) Ann Creer, claimant's teacher in a church-based program, AR 313-16; (7) David Evans, M.D., treating source, AR 555-56; (8) Richard Lind, M.A., treating source, AR 545-46; (9) Amy Budoff, M.D., responding to an interrogatory, AR 756-65; (10) Sacramento Ear, Nose, and Throat, AR 329-487, 661-702; (11) Sutter Medical Center, AR 488-500, 507-40, 703-12, 748-55; and (12) AMPLA Health, AR 501-06, 713-47.

### III. ANALYSIS

A child under the age of 18 is disabled if he has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. While the definition and evaluative process differs from that of adults, a child is entitled to disability benefits if his impairment is "as severe as one that would prevent an adult from working." *Sullivan v. Zebley*, 493 U.S. 521, 529 (1990).

An ALJ determines a minor child's eligibility for Social Security benefits in a three-step sequential evaluation process, asking: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a medical impairment, or combination of impairments, that

3

qualifies as severe; and (3) whether any of the claimant's impairments meet or exceed the severity of one of the impairments listed in the regulations.[2] *See* 20 C.F.R. § 416.924a. In answering the third question, an ALJ must consider the combined effect of all medically determinable impairments, including those that were not deemed severe at step two. 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(c). If a claimant's impairment or combination of impairments have lasted for a continuous period of at least twelve months and either meet or functionally equal the severity of the impairments listed in the regulations, then the claimant will be found to be disabled. 20 C.F.R. § 416.924(d). In determining whether a claimant's impairment or combination of impairments functionally equal the regulation's listed impairments, an ALJ must assess the claimant's functioning in six domains: (1) acquiring and using new information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b). A claimant's functioning within these domains must be compared against children of the same age who do not have impairments. *Id.* If a claimant's impairments result in "marked" limitations in two domains or an "extreme" limitation in one domain, then the impairments functionally equal those listed in the regulations. 20 C.F.R. § 416.926a(d).

At step one, the ALJ found that claimant had not engaged in substantial gainful activity since April 30, 2015. AR 35. At step two, the ALJ found that claimant had the severe impairment of bilateral hearing loss, but made no finding regarding claimant's expressive language impairment—apparently treating it more as a symptom of claimant's hearing loss than as a separate impairment. *See* AR 35. At step three, the ALJ found that claimant did not have an impairment or combination of impairments that met or functionally equaled the severity of the listed impairments. AR 35. In evaluating claimant's six functional equivalence domains, the ALJ found that claimant had less than marked limitations in the following four domains: acquiring and using information, attending and completing tasks, interacting and relating with others, and health

---

[2] For adults, the analysis includes a fourth and fifth step, during which an ALJ further determines whether a claimant can perform past relevant work or other specified types of work existing in significant numbers in the national economy. *See Barnes v. Berryhill*, 895 F.3d 702, 704 n.3 (9th Cir. 2018); 20 C.F.R. § 416.920.

and physical well-being.  AR 44-49.  In the remaining two domains—claimant's moving about and manipulating objects and his ability to care for himself—the ALJ found that claimant had no limitations.  AR 47-49.

In his motion for summary judgment, claimant argues that: (1) the ALJ erred by not finding, or by insufficiently considering evidence of, a severe expressive language impairment; (2) claimant plausibly demonstrated a presumptive disability, namely a neurodevelopmental disorder; (3) the ALJ improperly rejected the opinion of claimant's teacher, Ms. McClellan; (4) the ALJ erred in assessing less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others; and (5) the ALJ failed to specify whether he was finding claimant's or claimant's mother's testimony to be inconsistent with other evidence.  *See* ECF No. 11 at 7-14.  In opposition, the Commissioner argues that: (1) the ALJ was not required to analyze claimant's expressive language impairment independent of his hearing loss; (2) claimant did not demonstrate a presumptive disability; (3) the ALJ properly discounted Ms. McClellan's questionnaire responses that were inconsistent with medical evidence; (4) the ALJ properly found less than marked limitations in the three domains challenged by claimant; and (5) the ALJ properly evaluated all testimony, and any lack of clarity in the written decision is not a basis for remand.  *See* ECF No. 14 at 8-16.

**A. Expressive Language Impairment**

Claimant argues that the ALJ failed to consider sufficiently claimant's expressive language impairment and erred by not finding it severe.  ECF No. 11 at 8.  As claimant points out, "the step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

In considering claimant's expressive language impairment, I start with the opinion of Ms. Kokal, the only consultative examiner specializing in expressive language, who evaluated claimant on two occasions.  During her August 25, 2015 evaluation, claimant wore hearing aids in both ears, yet Ms. Kokal still determined that claimant's "overall speech intelligibility was rated at less than 50% accuracy even with known context."  AR 543.  Claimant's performance on the Structured Photographic Articulation Test put him at a "<1 percentile rank."  AR 543.  Based

5

on the Preschool Language Scale-5, claimant's score in expressive language skills put him in the 5th percentile for his age, and his score for receptive language skills put him in the 18th percentile. AR 542. In her November 30, 2017 evaluation, during which claimant wore only one hearing aid, Ms. Kokal noted that claimant exhibited "delays in his expressive language skills," "exhibited speech characterized by multiple sound distortions, omissions and substitutions," and had a rated speech intelligibility at "60 to 65% accuracy at the conversational level for speech."[3] AR 766-67. This suggests a severe expressive language impairment—indeed, one that is both more disabling than claimant's hearing loss and less improved by hearing aids.

Other sources corroborated these findings. Dr. McElroy, while opining primarily as an otolaryngologist, made note of claimant's "[s]peech delay secondary to partial hearing loss" and his "mild deficits in interacting and relating with others, as a result of his delayed speech and deficits in verbal expression." AR 552. Ms. McClellan's responses to a teacher questionnaire noted: "claimant had very serious problems in acquiring and using information, due to difficulty interacting with other children"; "claimant had a lack of understandable speech"; "conversation was often difficult"; but "claimant did a lot better with paying attention and speaking when he wore both hearings aids."[4] AR 39. Additionally, claimant's mother and his church-based teacher both testified about his speech issues. AR 36-37, 67, 74-75.

Based on the evidence in the record, the finding that claimant's expressive language impairment did not meet step two's "de minimis" test is not supported by substantial evidence and is contrary to the law. *See Smolen*, 80 F.3d at 1290. This does not end the analysis, though; I must conduct a harmless error analysis. Regardless of an ALJ's step-two findings, an ALJ "must consider the 'combined effect' of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); *see* 20 C.F.R. § 416.923 ("[W]e will consider

---

[3] Ms. Kokal noted that, even with only one hearing aid, claimant presented with "*receptive* language skills . . . within normal limits." AR 767 (emphasis added).

[4] While the ALJ cites to Ms. McClellan for the proposition that "claimant performed well in school, with the use of both hearing aids," Ms. McClellan's submitted responses do not support this conclusion. *See* AR 45, 229-35. Beyond Ms. Kokal's findings, the record remains unclear as to the degree of improvements in claimant's expressive language skills when using hearing aids.

the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."). If the ALJ properly considered the combined effect of claimant's hearing and expressive language impairments at step three, then the step-two error would be harmless. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("[T]he court will not reverse the decision of the ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination.").

In claimant's view, the ALJ's discussion of his expressive language impairment was "glossed in an evidence summary" and lacked sufficient analysis. *See* ECF No. 18 at 2, 8-9. The Commissioner, on the other hand, argues that "[f]inding error in the ALJ's consideration of [claimant's] speech impairment would simply require that this issue be considered at step three—which the ALJ expressly did." *Id.* at 14. According to the Commissioner, the ALJ "considered the evidence regarding Plaintiff's speech impairment in lockstep with the ALJ's consideration of [claimant's] hearing deficit." ECF No. 14 at 13.

In cases where the Ninth Circuit has held that a step-two error was harmless because it did not impact the ultimate nondisability determination, either the severe impairments subsumed the omitted impairments or later steps directly accounted for the omitted impairments. *See, e.g.*, *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding that "any error that the ALJ made in failing to include the bursitis at Step 2 was harmless" because the "ALJ extensively discussed" this impairment at step four and included limitations expressly accounting for the impairment); *Rice v. Saul*, 817 F. App'x 395, 397 (9th Cir. 2020) ("The ALJ found that Rice's back pain secondary to degenerative disc disease was severe and properly considered Rice's non-severe impairments in assessing his residual functional capacity."); *Koch v. Berryhill*, 720 F. App'x 361, 364 (9th Cir. 2017) ("The ALJ discussed the symptoms and limitations associated with both arthritis and varicose veins when assessing Koch's RFC, and the RFC includes limitations related to arthritis and varicose veins, such as limitations on Koch's ability to sit, stand, and use her extremities."); *Matrunich v. Comm'r, Soc. Sec. Admin.*, 478 F. App'x 370, 371 (9th Cir. 2012) ("Even if we were to hold that the ALJ committed legal error by finding that the knee pain was

1    not severe, it was harmless . . . The ALJ, by addressing Matrunich's leg pain, necessarily
2    incorporated the pain that Matrunich was experiencing with her right knee into his evaluation.").
3           The situation here is different. The ALJ's later analysis did not address claimant's
4    expressive language impairment. During the analysis of the six functional equivalence domains,
5    the ALJ noted only limitations due to hearing loss; the ALJ never mentioned, let alone analyzed,
6    claimant's expressive language impairment. *See* AR 44-50. Instead, throughout the decision, the
7    ALJ seems to have considered claimant's expressive language impairment as a symptom of his
8    hearing loss, not an independent source of potential disability. *See, e.g.*, AR 41 ("The claimant
9    alleged he could not sustain age-appropriate activity, due to bilateral hearing loss, and related
10   symptoms.") (internal citation removed).
11          But claimant's hearing loss does not subsume his expressive language impairment; a
12   thorough treatment of the former does not necessarily include consideration of the latter. In *Hill*
13   *v. Astrue*, "the ALJ excluded the panic disorder diagnosis and improperly limited the definition of
14   panic attack to only those attacks severe enough to collapse someone to the ground." 698 F.3d
15   1153, 1161 (9th Cir. 2012). The Ninth Circuit observed that both generalized anxiety and panic
16   disorders fit under the umbrella of anxiety disorders and have similar causes and treatments, but
17   noted that the impairments are distinct in their symptoms and in the limitations that they impose.
18   *See id. (citing Index of Psychiatric Disorders, Diagnostic and Statistical Manual of Mental*
19   *Disorders, Fourth Edition* 2000, §§ 300.01, 300.02, 300.21). The Ninth Circuit held that,
20   "[b]ecause the ALJ excluded panic disorder from Hill's list of impairments and instead
21   characterized her diagnosis as anxiety alone, the residual functional capacity determination was
22   incomplete, flawed, and not supported by substantial evidence in the record." *Hill,* 698 F.3d at
23   1161.
24          Here, as in *Hill*, claimant's impairments may share a common cause and have overlapping
25   treatment, but they are distinct in their symptomology and limitations. Ms. Kokal's evaluations in
26   particular—occurring when claimant wore at least one hearing aid—show that claimant's
27   expressive language impairment stands apart from his hearing limitations. *See* AR 542-43, 766-
28   67. Put simply, claimant has trouble speaking even when his hearing impairment is significantly

corrected. Perhaps claimant's difficulties with expressive language reflect the impact of impaired hearing earlier in his life—but this is outside the scope of the disability analysis and beyond the reach of the record. At present, the court need only determine whether the step two error was harmless; it was not. By treating claimant's expressive language impairment as a symptom of his hearing loss—while focusing on the positive impact of hearing aids—the ALJ failed to consider the combined effect of both impairments. *See* AR 35-49.

I will also note that the ALJ did not analyze Ms. Kokal's opinions in the "Medical opinion evidence" section of the decision, despite Ms. Kokal's qualification as an acceptable medical source "for speech or language impairments." *See* AR 43-44; 20 C.F.R. § 404.1502(a)(5). I will not remand based on a perceived organizational shortcoming, but the omission here reflects a deeper issue: the ALJ did not analyze Ms. Kokal's findings while comparing claimant to unimpaired children of the same age. The ALJ thus failed to analyze what may have been the best medical evidence of claimant's expressive language impairment. This is especially troubling because Ms. Kokal's findings undermine the ALJ's conclusion that claimant does well with hearing aids. *See* AR 41-50.

In sum, the ALJ failed to account for claimant's expressive language impairment at step three, and remand is required. *See Hill*, 698 F.3d at 1161; *Lewis*, 498 F.3d at 911; *Rice*, 817 F. App'x at 397; *Matrunich*, 478 F. App'x at 371.

### IV.   CONCLUSION AND ORDER

The court need not reach the other issues raised by claimant. For the reasons stated in this opinion, the court remands this case for further consideration by the Social Security Administration. The court hereby orders that:

1. Claimant's motion for summary judgment, ECF No. 11, be granted;
2. the Commissioner's cross-motion for summary judgment, ECF No. 14, be denied;
3. the decision of the Commissioner of Social Security be reversed, and the case remanded for further proceedings; and
4. the clerk of this court enter judgment in favor of claimant T.T. and against defendant Commissioner of Social Security, and close this case.

IT IS SO ORDERED.

Dated:   January 28, 2021                                                                        
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE